The next case this morning is number 52010115 people versus Moses arguing for the appellant to Wanya Moses is Nathan Swanson arguing for the appellate people of the state of Illinois is Michael Lennox. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please not only the clerk is permitted to record these proceedings. Good morning, gentlemen. Mr. Swanson, would you like to begin? Thank you, good morning. May please the court counsel. I'm here on behalf of appellant to Wanya Moses. We are appealing the trial court's denial of his motion to quash and suppress. As to point one, appellant argues that the trial court erred in finding that officer weeks did not impermissibly extend the stop of his vehicle and that the trial court erred in finding that the officer had probable cause to search the vehicle following the canine sniff. To begin, the trial court did not make any factual findings with regards to the length of the stop. The trial court's order simply found that it was not impermissibly extended. So there are no factual findings here to be deferred to. It's purely a question of denial of overview. The state alleged in their response motion that appellant Moses was attempting to call for a bright line rule. The only bright line rule that Mr. Moses would argue here is the bright line rule that's previously been enunciated, which is that a stop of a motor vehicle cannot be reasonable suspicion of criminal activity. Looking at the particular facts of this case, there was no objective basis for a reasonable person, for a reasonable officer to believe that any criminal activity was afoot other than the traffic violation for which Mr. Moses was pulled over. And Officer Weeks, similarly, it's almost undeniable that Officer Weeks impermissibly extended the stop based on his desire to find enough information to justify extending it further to have it in a dog search and then searching the vehicle. It should be noted that Officer Weeks' testimony was almost immediately that he believed there was something else going on and he was going to look for additional evidence to justify extending the stop and then getting into a dog search. He was looking for that evidence throughout the course of the stop. Even parenthetically, support for that is found with the fact that before Officer Weeks even turns on his dash cam, I'm sorry, his body cam video, he's called for backup for the purpose of, as he testified, having another officer there when he deployed the dog. So from the moment he initiated the stop, before he even turns on his body cam, he's looking for ways to extend it so that he can get evidence to extend it further, to do this dog search, and then proceed to an archivist investigation. The purpose of the stop, the objective purpose of the stop that it should be measured against is Officer Weeks' testimony that he was going, or the uncontroverted statement, I'm sorry, that Officer Weeks was going to issue a warning ticket. By five minutes into the course of the stop, Officer Weeks has all of the information necessary to complete that warning ticket and he begins doing so. His testimony was that that should take at most a couple of minutes. It took much more than a couple of minutes. Officer Weeks fills out roughly half of the ticket between five minutes into the video and 13 and a half minutes into the video. And I would encourage this court to look at the video, which is an evidence and was an exhibit submitted to trial and was before the court. He repeatedly stops filling out that form to ask unrelated questions about where Mr. Moses was coming from, where he was going, does he have any money in the car, does he have any contraband in the car, does he have any criminal history. None of those questions have anything to do with the purpose of the stop, with writing the warning. At about 13 and a half minutes in, Officer Weeks stops filling out the warning entirely with two check boxes, one line of text, and a signature block to go. Officer Weeks departs entirely from the purpose of the stop, the traffic violation, to continue asking unrelated questions. No one could reasonably believe that those questions were related to the purpose of the stop. And so in doing so, in departing from that, in terminating, filling out the warning, Officer Weeks has impermissibly extended the stop. I have one question. Wasn't this a rental car and then wasn't there some time spent checking with the rental company about who rented the car and all that sort of thing? This was a rental car, Your Honor, and there was some questions about, Officer Weeks asked for a copy of the rental agreement, he was provided that. It showed that Mr. Moses had rented the vehicle. Was that in the car or on the defendant? The rental agreement, I believe, and you'll forgive me, Your Honor, I don't recall if he had to get out of the vehicle to get it. Probably in the glove box, yes. It was in the glove box. However, I do, my recollection is that he, Officer Weeks, did have that in his possession by five minutes into the video. When he begins writing the warning ticket, he has the rental agreement in front of him and you can see him referring to the rental agreement as he's filling out the warning ticket in that five to 13 and a half minute period. So it'd take a little longer if you're dealing with a rental ticket. It might, Your Honor, yes, but he didn't have the information. And then 13 and a half minutes in, Officer Weeks, or shortly thereafter, begins saying that he's needs to get the VIN number. The VIN number and the ticket was both entered into evidence, it's also featured in the motion, it's visible on, I'm sorry, not the ticket, the warning, was entered into evidence, it's visible in the motion, it's visible on the body cam. There is no place on the warning for the VIN number. There was never any reason to get that information except for Officer Weeks to continue to delay the stop. Finally, when his backup arrives, the backup that he has no need for at this point because he has no reasonable belief of any criminal activity aside from the traffic violation, Officer Weeks then says, I'm going to give this warning to another officer to complete, officer who has no personal knowledge of anything, and I'm going to go get the VIN number. He has no reason to do any of this. He should have diligently continued, that is his constitutional obligation, to diligently prosecute the purpose of the stop, which was to issue a warning for the traffic violation, speeding, and for touching the fog line. Instead, what Officer Weeks does is he abandons the purpose of the stop, abandons the warning, gives it to another officer, goes to look for the VIN number, and goes to question the occupant. Then, finally, when he gets some form of contradictory information, he then says, I'm now going to initiate the dog search. Now, this was also part of Appellant's which is that under these circumstances, it would be wholly unreasonable to believe that that dog search was reliable. Officer Weeks testified that his dog has a history of false positives. Officer Weeks testified that he should not have gotten in front of the dog because one of the dog's signals is that it stops. He does that. It's visible on the video, and most importantly, Officer Weeks testified that touch contamination from contraband can result in a false positive. Officer Weeks testified that he had earlier seized marijuana with his bare hands, that he proceeds to touch the vehicle, and somehow that marijuana falls out of his patrol vehicle and has contaminated the scene while he's conducting the dog search. And Officer Weeks knows the marijuana has contaminated the scene because when, again, on the dash cam video, Mr. Moses points to it, or I'm sorry, announces his presence, I'm not sure if he points to it, but says, what is that? Officer Weeks knows exactly what he is referring to despite having no clear line of sight. He says immediately, no, that was from training. That's from a prior stop. Now, those are contradictory statements, and there's no resolution of that, but Officer Weeks knows that prior to deploying his dog, the scene has been contaminated by contraband. Under those objective facts, no one could believe that this dog's alert, such as it may have been, was reliable and would provide probable cause for a search of the vehicle. And then as to the final point of Appellant's brief, point two, it seems as if there's no actual disagreement between the parties. At least, Appellant argues that any statement of Mr. Moses was a product of the improper extension and the improper dog search. The state hasn't alleged that there is any proper basis for the statement. So aside from that, they're just, the state has only argued that the search was not, or the stop was not improperly extended, and that the search was good, and therefore it's admissible. So I think we would all agree that if the stop should have been concluded prior to the dog search, then the contraband never should have been located, and the statements never should have been elicited. And on that basis, we would ask that you reverse the conviction and remand the matter for further proceedings. I'm sorry, Your Honor, I could not hear you. Justice Welch, any questions? No further questions. Justice Barberis? I'm done. Okay, Mr. Swanson, we'll hear from the state, and then you'll have some time to reply. Thank you. Mr. Lennox? Thank you, Your Honor. Good morning, opposing counsel, Your Honors, and may it please the court that Mr. Lennox and I represent the state in this matter. This court should affirm the circuit court's denial of the defendant's motion to quash arrest and suppress evidence because Captain Weeks did not improperly prolong the traffic stop, and because he articulated specific facts leading to his reasonable suspicion that predicated him conducting an open-air sniff with his narcotics canine. Further, this court should affirm the defendant's conviction of unlawful possession of a controlled substance with intent to deliver because the circuit court appropriately considered the defendant's confession to police. Your Honors, despite the defendant's repeated attempts to highlight the only facts that are the most advantageous to him in his brief, the United States Supreme Court in Ornelas and our Supreme Court in Manzo make it clear the standard of review stating the principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts viewed from the standpoint of an objectively reasonable officer amount to reasonable suspicion or probable cause. The first part of the analysis involves only determination of historical facts, but the second is a mixed question of law and fact. The historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the relevant standard. A circuit court's finding of fact is given deference when ruling on a motion to suppress and will be reversed only when the findings of fact are against the manifest weight of the evidence. If the reviewing court accepts the trial court's factual findings, it conducts a de novo review of whether the suppression was appropriate under those facts. In reference to the stop and whether or not it was improperly prolonged, traffic stops are analyzed under the familiar principles of Terry v. Ohio, and like in a Terry stop, the tolerable duration of police inquiries in the traffic stop is determined by the seizure's mission to address the traffic violation that warranted the stop and attend to related safety concerns. The courts have repeatedly declined to adopt a bright line rule to indicate a fixed point at which investigative detentions become unreasonable, and have opted to employ a contextual totality of the circumstances analysis that includes consideration of the brevity of the stop and whether the police acted diligently during the stop. And though the defendant claims that he does not seek this court to adopt a bright line rule in his reply brief, one wonders what other reason there would be to provide only the time length for the cases of Koutsakis, Litwin, Baldwin, and McCohen, which I went over extensively in my if not all of the facts I provided for the court's aid in this fact-based analysis from the cases as insignificant or unnecessary in his reply brief. Your honors, at this point, I find it important to provide the circumstances as detailed in the body camera video exhibit. I recognize that this will be a lot of information, and it is information I provided in my brief, so before I do, I was wondering if your honors had any specific questions where my attention would otherwise be centered. Like I said, these facts are integral to a totality of the circumstances analysis for determining whether or not the stop was improperly prolonged, but my fear is that my recitation of the facts will take a large portion of my time this morning. Mr. Lennox, I have a question. It seems very odd to me that an officer would allow his dog out when there's cannabis in his car from a prior stop, and it falls out of the car. I mean, it seems not only sloppy, but reckless to me in this stop scenario. Yes, your honor. So the facts were that the cannabis, the small amount of cannabis, was placed on the passenger side, the front passenger side where the defendant was placed, and the facts provide that he was left alone for a time prior to being taken out of the car, and of course, after he was taken out of the car, that's when he said that there was cannabis on the side. So from the facts, I'm not sure that it was outside of the car prior to the defendant leaving the car, but also the dog did not alert near the police officer's car. The dog did not alert when he was removed from the back of the car, despite the defendant's assertion that he had some smell of cannabis on his hand. The dog alerted on the driver's side of the car, and the half kilo of cocaine was found in the driver's side trunk of the car. But it was in the trunk. Yes, your honor, but it was also on the driver's side of the car, and it was... I'm sorry, your honor. I don't know how you get on the driver's trunk. You mean it was just on the right side as you look at the back of the car? Or the left side of the trunk? Yes, your honor. So in looking at the video, you can see he goes through the entire car, but in the trunk, he starts peeling up the rug that sits over that between some parts of the car. He finds $27,000, and on the left side, he finds half a kilo of cocaine and also more rubber bands that he thinks was maybe for other kilos of cocaine, but of course we cannot prove that. Okay, thank you. Are there any other questions from your Justice Barberas? No. Okay. On September 11, 2018, the defendant was charged with unlawful delivery of a controlled substance. This charge came after the defendant was pulled over on the aforementioned day at 1259 a.m. for speeding and improper lane usage. The defendant exhibited a pattern of strange behavior prior to the traffic stop. First, the defendant got over into the that the defendant was traveling on the road and Captain Weeks was parked on the shoulder of an on-ramp from a rest stop and not on the road the defendant was traveling on. Next, the defendant slowed to almost 10 miles per hour below the speed limit maximum. Then the defendant engaged in a lane violation wherein he drove over the fog line, which Captain Weeks testified is behavior he quote, sees a lot with suspended drivers and also drug smuggling, things like that, and the theory is that the person is wanting to create distance from the police officer and they actually subconsciously leave the roadway and they're driving, looking into the mirror at the police vehicle, unquote. When the defendant pulled over and the stop began, more suspicious behavior from the defendant resulted. 16 seconds into the stop, Captain Weeks first approached the defendant's vehicle on the passenger side. In the moments after, Captain Weeks informed the driver and the passenger that he pulled them over because the defendant was speeding and went over the fog line, which is indicative of fatigued drivers or people driving under the influence. About a minute and 15 seconds into the stop, the defendant said that he was nervous when he handed the officer paperwork and Captain Weeks told him there was no reason to be. One minute and 35 seconds into the stop, the officer asked the defendant to join him in the squad car while the officer wrote the defendant his warning ticket. The defendant exited his car two minutes and 10 seconds in and the defendant and the officer entered the squad car two minutes and 45 seconds in. After getting into the squad car, the defendant began to and unprompted started to explain why he got over into the passing lane when he saw the police officer on the ramp. Captain Weeks pulls out the warning ticket and starts to file or to fill it out at five minutes and 12 seconds into the stop. During conversation with the defendant, the defendant said that he had been arrested for drugs, quote, back in his younger days, unquote, and quickly transitioned to also getting a traffic ticket before. And, Your Honors, it looks like I'll have to abandon my recitation of the facts and simply rest on my facts in the brief and ask this court to uphold the lower court's ruling. Thank you, Your Honors. Thank you, Mr. Lennox. Justice Welch, any questions? Justice Barberas? No. Okay. Mr. Swanson, your bottle? Yes, Your Honor. Thank you. Just a few quick things. First, with regards to the proper standard of review here, again, in terms of the duration and the findings from the trial court that are to be deferred to, trial court's judgment was solely that the stop was not impermissibly extended. So the review for this court would be, I submit, de novo review of whether the facts as established by the evidence, by the testimony, by the exhibit are sufficient to or amount to a reasonable suspicion of criminal activity to justify the duration of the stop. As to whether or not Mr. Moses is suggesting there should be a bright line rule, the point of citing the times in the prior cases was not to establish that any stop that goes over those times is necessarily impermissibly extended. It's that even a stop of that length could be impermissibly extended if the facts and circumstances of that particular stop demonstrate that it was impermissibly extended. We don't look at how long any stop might be in of itself. It's what happens during the stop. The question is not whether or not a stop of this length, 17 minutes, 20 minutes, however much it might be, is impermissible. It's whether or not in that 17 minutes, the stop was impermissibly extended. That's the bright line rule that's existing from the United States Supreme Court. That's the bright line rule that we ask you to look at. I would have to quibble with what the state said. The testimony was not that the contraband was located in the passenger side door compartment. It was that it could have been in the passenger side door compartment. It could have been in the center console. The officer was not sure where it was. He was not specific about where it came from or how much there was or why he had failed to check it into evidence, why he didn't put it in his trunk. He was asked where it had been. He was unsure. Any kind of implication that Mr. Moses had access to it is just supposition. Finally, the state suggested, and I think they're correct about this, that was there objective facts that could be pointed to to support a reasonable suspicion here? The strange behavior the state alleges. First, it starts with Mr. Moses pulling over into the passing lane when he sees the officer stopped on the side of the road. Had the officer's lights been illuminated, that would have been legally required. I submit that any driver would know that standard practice is if you see this car stopped on the side of the road, you move over because you don't know what occupants of that vehicle are going to do. I thought the evidence was that it was on a side ramp, not actually on the road itself. On the side of the road. It was on the side of the ramp, which is probably two lanes across. To my knowledge, I believe he did specify that he was on the side of the ramp, but the point would still apply. Under the statute, had his lights been illuminated? But you keep saying road, and I think they said ramp. I thought the evidence was ramp. I believe he was on the on-ramp, and I think the testimony was that he was there for where the on-ramp joins the road, as opposed to being further back where there might have been an island in between. But again, had his lights been illuminated, Mr. Moses would have been legally required to move over. So to suggest that under those circumstances, that fact is strange is, I would submit, incorrect. The testimony about subconscious slowing down. Well, the slowing down is, again, he was within the legal limit. The testimony was that the speed, in that area, was 45. Mr. Moses never approached that speed. The testimony that he unprompted said he was nervous. Plenty of people are nervous while driving. The state seemed to suggest that Mr. Moses kind of unprompted said that he had a criminal conviction. Again, that was in response to a specific inquiry from the police officer. Have you ever been arrested before? And he said, yes, I have back in my youth. In review of the video, Mr. Moses does not make any rambling, vehement, any of the words used by Pelley in their brief statements. He responds to the officer's inquiries. And those inquiries were designed, and we can trust Officer Weeks when he said this, to get additional information to justify extending the stop so that he could initiate the dog search. And the last point I'll make is this. The exclusionary rule is designed to deter police misconduct. To suggest that this officer's behavior was acceptable is to give any officer a roadmap to avoid Rodriguez, to show them how they can extend the stop simply by dodging and weaving. And for that reason, we'd ask for the relief that we saw. Okay, thank you both for your arguments today. Justice Walsh, any other questions? No further. Okay, Justice Barberos? Nothing, thank you. All right, this matter will be taken under advisement. We will issue an order in due course. Have a good afternoon.